**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:15-CV-00058-HBB**

**MURRAY L. CARTER**                                                                                 **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                              **DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Murray L. Carter ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered September 25, 2015 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Payments on June 11, 2012 (Tr. 335-341, 342-353). Plaintiff alleged that he became disabled on June 6, 2012, as a result of heart disease, heart attack, and Chronic Obstructive Pulmonary Disease ("COPD") (Tr. 335, 342, 376). On September 25, 2013, Administrative Law Judge Neil Sullivan ("ALJ Sullivan") conducted a video hearing from St. Louis, Missouri (Tr. 105). Plaintiff and his attorney, Leigh Doyal, participated in the hearing from Owensboro, Kentucky (Tr. 105). Kenneth Boaz, an impartial vocational expert, testified during the hearing (Tr. 105). After the administrative hearing, ALJ Sullivan became unable to issue a decision (Tr. 38). As a result, the Hearing Office Chief, Administrative Law Judge Paul Gaughen ("ALJ Gaughen"), reassigned the case to himself and scheduled another hearing (Tr. 38).

On March 18, 2014, ALJ Gaughen conducted a video hearing from St. Louis, Missouri (Tr. 52). Plaintiff and his attorney, Brad Rhoads, participated from Owensboro, Kentucky (Tr. 52). George Oliver, M.D., an impartial medical expert, and Zachary Allen Matthews, an impartial vocational expert, also testified during the hearing (Tr. 52).

In a decision dated June 13, 2014, ALJ Gaughen evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 38-51). At the first step, ALJ Gaughen found Plaintiff has not engaged in substantial gainful activity since June 6, 2012, the alleged onset date (Tr. 41). At the second step, ALJ Gaughen determined that Plaintiff's affective disorder and coronary artery disease are "severe" impairments within the meaning of the regulations (Tr. 41). Notably, at the second step, ALJ Gaughen also determined that Plaintiff's knee pain and respiratory problems are "non-severe" impairments within the meaning of the regulations (Tr. 41). At the third step, ALJ Gaughen concluded that

Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 41).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work because he is limited to standing and/or walking four hours in and eight-hour workday; he can stand and/or walk between one to two hours at one time, but he would have difficulty walking on uneven ground; his ability to sit during an eight-hour workday is unlimited; he is unable to perform fast-paced production demands or handle unusual work stressors, such as rigid hourly production quotas; he cannot work in dangerous industrial settings, drive dangerous industrial equipment, or work at unprotected heights; he must avoid exposure to temperature extremes and magnetic devices; he requires clear-cut, well-explained procedures to follow; he cannot perform multi-tasking, executive report writing, or similar tasks; he would benefit from a supervisor in performing tasks with six to seven new steps to be learned and applied; he can get along with others in routine and perfunctory, job-related social interactions (including interaction with retail public if necessary), but he would have difficulty with higher-level or sophisticated social interaction (Tr. 43). Notably, in the context of making the above residual functional capacity findings, ALJ Gaughen assigned great weight to the March 18, 2014 testimony of the non-examining cardiac expert, Dr. Oliver; little weight to the opinions of the non-examining state agency physicians, Drs. Irlandez and Mukherjee; little weight to the September 27, 2013 opinion of the treating cardiologist, Dr. Mercer; some weight to the opinions of the non-examining state agency psychological consultants, David Kirk and Ed Ross; and no weight to the opinion of Marcy Walpert, M.A.[1] (Tr. 46-48).

---

1 Marcy Walpert, M.A., is a licensed psychological practitioner (Tr. 648-653). Despite recognizing her credentials, ALJ Gaughen mistakenly referred to her as Dr. Walpert (Tr. 42, 46, 49).

At the fourth step, the vocational expert, Zachary Allen Matthews, considered ALJ Gaughen's hypothetical question regarding Plaintiff's current residual functional capacity (Tr. 95-99). The vocational expert opined that Plaintiff would not be able to perform his past relevant work (Tr. 95-99). Relying on the vocational expert's testimony, ALJ Gaughen found that Plaintiff was unable to perform any of his past relevant work (Tr. 49).

At the fifth step, ALJ Gaughen considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 49-50, 99-103). He found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 49-50). Therefore, ALJ Gaughen concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from June 6, 2012, through the date of the decision (Tr. 51).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 33-34). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting

Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of ALJ Gaughen's decision (Tr. 1-4). At that point, ALJ Gaughen's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of ALJ Gaughen, not the Appeals Council, and the evidence that was in the administrative record when ALJ Gaughen rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process for Reviewing Disability Claims

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, ALJ Gaughen denied Plaintiff's claim at the fifth step.

### The Residual Functional Capacity Assessment

Plaintiff disagrees with Finding No. 5 which sets forth ALJ Gaughen's assessment of Plaintiff's residual functional capacity (DN 14-1). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in

making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff has set forth six reasons why he disagrees with ALJ Gaughen's residual functional capacity determination (DN 14-1). The first three reasons focus on ALJ Gaughen's assignment of weight to medical source statements in the record. The fourth addresses ALJ Gaughen's assessment of Plaintiff's credibility. The fifth concerns ALJ Gaughen's consideration of the combined effect of Plaintiff's impairments. The final reason involves ALJ Gauaghen's purported speculation about the medical evidence.

<u>ALJ Gaughen's Assignment of Weight to Medical Opinions</u>

In this section, the undersigned will address Plaintiff's first three reasons for disagreeing with ALJ Gaughen's residual functional capacity assessment. All three challenge ALJ Gaughen's assignment of weight to a medical source statement in the record (DN 14-1 at 3-10). More specifically, Plaintiff is arguing there was not substantial evidence to support ALJ Gaughen's (1) assignment of "great weight" to the opinion of Dr. George Oliver, a non-examining testifying medical expert; (2) failure to give "controlling weight" or "majority weight" to the opinion of Dr. Albert B. Mercer, the treating cardiologist; and (3) assignment of "significant weight" to the opinions of David Kirk, Ph.D., and Ed Ross, Ph.D., the non-examining state agency psychological consultants (DN 14-1 at 3-10).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight. Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).
> The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).
> On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization,

> consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

1

The undersigned will first address Plaintiff's claim that ALJ Gaughen's decision to give great weight to the testifying independent medical expert, Dr. Oliver, is not supported by substantial evidence in the record (DN 14-1 at 3-5). Plaintiff argues that Dr. Oliver's opinion was based on an incomplete medical record because he did not review the medical records concerning a catheterization and open heart surgery in January 2014 and the recovery records (Id.).[2] Plaintiff believes those medical records demonstrate Dr. Oliver's opinion was inaccurate (Id.). Additionally, Plaintiff argues Dr. Oliver's opinion indicating he did not meet the disability criteria should not be afforded any weight because that is an issue reserved to the Commissioner (Id. citing 20 C.F.R. 404.1527(d)).

Defendant contends that substantial evidence supports ALJ Gaughen's decision to give great weight to Dr. Oliver's opinion (DN 19 at 3-5). Additionally, Defendant contends that ALJ Gaughen appropriately applied the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c) in assigning weight to the opinion of Dr. Oliver (Id.).

---

2 Plaintiff also points out that Dr. Oliver did not have the opportunity to consider emergency room records from Methodist Hospital dated March 6 and 9, 2014 and July 12, 2014 (DN 14-1 at 4). However, this medical evidence was not part of the administrative record before ALJ Gaughen. Instead, Plaintiff provided this medical evidence to the Appeals Council in support of his request for review (Tr. 5, 1904-1918). Since the Appeals Council considered this medical evidence but declined Plaintiff's request for review (Tr. 1-4), the Court cannot consider it in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

9

Dr. Oliver's curriculum vitae indicates that he is qualified to testify as a medical expert in cardiology (Tr. 311-331). During the March 18, 2014 administrative hearing, Dr. Oliver explained that rendering an opinion about the severity of Plaintiff's heart and coronary artery disease was complicated by inconsistent test results, the level of Plaintiff's daily activities, his subjective complaints of limitation, and his continued cigarette smoking (Tr. 57-63).[3] In essence, Dr. Oliver relied on the results of procedures and tests performed from August 2, 2012 through November 6, 2013 to reach his conclusion that Plaintiff's heart and coronary artery disease were not severe enough to meet the criteria of a listed impairment in Appendix 1 (Tr. 57-63, 75, 700-702, 1255-1256).[4] Additionally, Dr. Oliver believed that Plaintiff's purportedly debilitating fatigue was more likely caused by depression than coronary artery disease (Tr. 61). Further, Dr. Oliver disagreed with the degree of limitation that Dr. Mercer expressed on September 27, 2013, because it was inconsistent with the results of procedures and tests in the record (Tr. 60, 68, 1218-1222). Notably, Dr. Oliver did not express an opinion regarding the exertional and non-exertional limitations imposed by Plaintiff's heart and coronary artery disease (Tr. 53-71).

---

3 Dr. Oliver pointed out that test results regarding Plaintiff's left ventricle ejection fraction were as low as 40 percent on November 29, 2012 and October 22, 2013 to as high as normal on November 6, 2013 (Tr. 58-59). Dr. Oliver indicated the catheterizations also revealed conflicting information regarding Plaintiff's coronary artery disease (Tr. 59-). For example, on August 2, 2012, Plaintiff underwent a catheterization that revealed minimal diffuse disease in the left main anterior descending artery and left coronary artery but a serious enough problem with his right coronary artery to require a complex angioplasty that involved placement of three stents (Tr. 59-63). Yet a catheterization less than a year later on March 19, 2013, showed narrowing somewhere between 40 and 50 percent in the left main anterior descending and circumflex arteries (Tr. 59-63).

4 More specifically, Dr. Oliver opined as follows:

> So, in summary, your honor, this gentleman has had some disease of his heart and the arteries of his heart, his heart muscle function has not met the criteria to disability and as far as I can tell, the disease of the coronary arteries don't meet the disability criteria either as I read it. So – so he's got the disease, but I don't think he meets the current disability criteria as I look at this – at least not at this point.

(Tr. 62-63). Thus, although Dr. Oliver did not specifically identify any listings in Appendix 1, it appears that he concluded both medically determinable conditions do not meet the criteria of a listed impairment in Appendix 1.

Cross-examination revealed that Dr. Oliver was unaware that Plaintiff experienced a heart attack in December 2013; doctors did a catheterization and other testing on January 17, 2013; and, because of the results of the catheterization and testing, a surgeon performed open heart double bypass surgery on January 24, 2014 (Tr. 63-71, 1817-1903). Notably, medical records regarding these events were not available for Dr. Oliver to review during the administrative hearing (Tr. 63-71). As a result, all Dr. Oliver could do is speculate that the bypass surgery "would presumably do nothing but help" Plaintiff (Tr. 64). Additionally, after listening to ALJ Gaughen read an excerpt from a post-surgical treatment note, dated March 5, 2014, Dr. Oliver commented "it sounds like the bypass surgery . . . did him some good" (Tr. 67, 1813-1815).

On re-direct examination, ALJ Gaughen asked Dr. Oliver to express an opinion about Plaintiff's condition based on the evidence in the record and what had been read to him from the March 5, 2014 treatment note (Tr. 72-73). Dr. Oliver responded that based on the evidence sent to him for review he did not think Plaintiff would meet the Social Security cardiac disability requirement (Tr. 72-73). However, Dr. Oliver indicated without looking at the medical records pertaining to the January 17, 2014 catheterization and the bypass surgery on January 24, 2016, he had no way of knowing: whether Plaintiff's condition got a lot worse after the November 6, 2013 catheterization; what the surgeon knew about Plaintiff's condition when the surgery was performed; and what the surgeon did during the surgery (Tr. 73-74, 75). Moreover, Dr. Oliver explained while the best they could do would be to improve the situation of the blood flow to Plaintiff's heart, normally after the patient has recovered from the surgery a cardiac stress test would be conducted to see what the patient can do as a result of the surgery (Tr. 74). Essentially, Dr. Oliver believed he was in a dilemma in trying to render an opinion because he lacked sufficient information with regard to Plaintiff's condition (Tr. 72-74).

At the close of the administrative hearing, ALJ Gaughen agreed to keep the record open so Plaintiff could submit the new medical evidence (Tr. 103). However, ALJ Gaughen was not receptive to counsel's desire to cross-examine Dr. Oliver about those records because he believed that counsel already made his record (Tr. 102).

Plaintiff's counsel submitted to ALJ Gaughen the medical records related to the open heart surgery in January 2014 and the post-surgical recovery (Tr. 1816-1903). This medical evidence was part of the administrative record when ALJ Gaughen rendered his decision.

Of particular relevance to this analysis are the medical records dated January 17, 2014. The records indicate Dr. Sheth felt that Plaintiff's left main artery needed further evaluation because Plaintiff kept experiencing chest pain and other symptoms (Tr. 1834, 1838). Dr. Sheth performed a catheterization which "[l]ooked like 50 percent disease" (Tr. 1838). Dr. Sheth observed that Plaintiff's ongoing symptomology was inconsistent with the cardiac catheterizations in March 2013, November 2013, and January 2014 which revealed no evidence of significant flow limiting coronary artery disease (Tr. 1834). Thus, Dr. Sheth's comments about the results of the cardiac catheterizations are consistent with Dr. Oliver's testimony about the catheterizations performed in March and November 2013. However, Dr. Sheth decided to perform an intravascular ultrasound study ("IVUS") "[b]ecause of patient's ongoing symptomatology and because of some tapering in the low distal left main, proximal LAD and trifurcation . . ." (Tr. 1834). Dr. Sheth's report indicates the IVUS "showed the **stenosis** of the worst side was **almost 80 to 86 percent** in the area of stenosis" (Tr. 1838). Therefore, Dr. Cefali was consulted and he "agreed that the patient will need bypass surgery because of serial left main stenosis" (Tr. 1838).

12

January 17, 2014, is the first time an IVUS was performed on Plaintiff and it showed the stenosis in Plaintiff's left main artery was significantly greater than what Dr. Oliver was aware of at the time he testified.

Despite this critical medical evidence becoming a part of the administrative record after Dr. Oliver testified, ALJ Gaughen did not obtain an updated opinion from Dr. Oliver or seek a new opinion from a different medical expert. Further, ALJ Gaughen did not even mention the January 17, 2014 IVUS test results in the decision (Tr. 45). Instead, ALJ Gaughen ignored the significance of these test results and relied on Dr. Oliver's opinion to support his finding that Plaintiff did not meet the requirements of listing 4.04C (Tr. 41-42).

At the fifth step in the sequential evaluation process, ALJ Gaughen accorded "great weight" to Dr. Oliver's opinions that Plaintiff's coronary artery disease did not meet the requirements of a listing in Appendix 1; Plaintiff's allegations of disabling symptoms were not compatible with the longitudinal medical evidence; and Plaintiff's heart muscle function disease was not as disabling as described in Dr. Mercer's opinion (Tr. 47). Notably, ALJ Gaughen explained that Dr. Oliver's testimony received "great weight" because he "has expertise in the cardiac field, he reviewed a considerable portion of the medical evidence, and he provided detailed testimony related to his reasoning for finding that [Plaintiff] is not suffering from disabling symptoms" (Tr. 47).

No one would dispute that Dr. Oliver has a great deal of expertise in the cardiac field (Tr. 311-332). Further, Dr. Oliver did review a considerable part of the medical evidence and on direct examination he provided detailed testimony in support of his opinion. However, ALJ Gaughen did not mention that Dr. Oliver's testimony became equivocal when he learned about Plaintiff's double bypass surgery following the catheterization on January 17, 2014. Moreover,

13

ALJ Gaughen failed to discuss the fact that Dr. Oliver's opinions did not take into consideration the January 17, 2014 IVUS test results which showed an 80 to 86 percent narrowing of Plaintiff's left main artery or the surgical records regarding the double bypass on January 24, 2014.  In sum, ALJ Gaughen's assignment of "great weight" to Dr. Oliver's testimony is not supported by substantial evidence in the record because the IVUS test results and the subsequent surgery undermined both the supportability and consistency of Dr. Oliver's testimony.

2

The undersigned will next address Plaintiff's claim that there was not substantial evidence to support ALJ Gaughen's failure to give "controlling weight" and/or "majority weight" to the opinions of Dr. Albert B. Mercer, the treating cardiologist (DN 14-1 at 5-10).  Plaintiff contends that Dr. Mercer's opinions are supported by substantial objective medical evidence in the record (Id.).  Plaintiff asserts that Dr. Oliver's opinions are not supported by the objective medical evidence and, therefore, do not constitute substantial evidence to support ALJ Gaughen's decision to give little weight to Dr. Mercer's opinion (Id.).[5]  Defendant argues that substantial evidence in the record supports ALJ Gaughen's decision to give little weight to Dr. Mercer's August 2012 and September 2013 opinions (DN 19 at 5-7).

In a letter dated August 24, 2012, Dr. Mercer indicated to Plaintiff that he had "severe diffuse coronary artery disease with recent stenting of the right coronary artery and persistent angina pectoris Class II-III (Tr. 593).  Additionally, Dr. Mercer "recommended permanent and

---

5 Plaintiff also asserts the emergency room records from Methodist Hospital dated March 6 and 9, 2014 and July 12, 2014, that the Appeals Council failed to consider, substantiates Dr. Mercer's opinion while discrediting Dr. Oliver's opinion (DN 14-1 at 9).  Plaintiff provided this medical evidence to the Appeals Council in support of his request for review (Tr. 5, 1904-1918).  Since the Appeals Council considered this medical evidence but declined Plaintiff's request for review (Tr. 1-4), the Court cannot consider it in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.  Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

total Social Security Disability in your condition" (Id.). On September 27, 2013, Dr. Mercer filled out a "CARDIAC RESIDUAL FUNCTIONAL CAPACITY QUESTIONAIRE" form (Tr. 1218-1222). Dr. Mercer identified the test results and Plaintiff's symptoms (Id.). Dr. Mercer indicated Plaintiff's prognosis was fair to poor and due to his pain Plaintiff experiences constant interference with his ability to attend and concentrate on tasks (Id.). Dr. Mercer opined that Plaintiff can sit, stand, or walk less than two hours in an eight-hour day; he would need frequent unscheduled breaks lasting as long as two hours; he would need to shift between sitting and standing at will; he would need to elevate his legs 80% of the workday; he can only occasionally lift and carry less than 10 pounds; he can perform no postural activities; he must avoid all exposure to extreme temperatures, pulmonary irritants, humidity, and wetness; and he would miss more than four days of work per month (Id.).

The administrative decision provides a relatively accurate summary of the August 2012 and September 2013 opinions from Dr. Mercer (Tr. 48). Notably, ALJ Gaughen did not assign weight to the August 2012 opinion (Tr. 48). By contrast, ALJ Gaughen indicated he gave "little weight" to Dr. Mercer's September 2013 opinion because "it is inconsistent with the numerous stable findings by Dr. Mercer, it is contradicted and devalued by the testimony of the medical expert [Dr. Oliver], and it does not incorporate the claimant's continued improvement with treatment in 2014" (Id.).

The undersigned will begin by observing that ALJ Gaughen did not follow the controlling weight rule because he failed to make the requisite findings on that issue and set forth "good reasons" for those findings. See Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2). Notwithstanding, ALJ Gaughen did weigh Dr. Mercer's September 2013 opinion based on some of the factors identified in the regulations (Tr.

15

48). 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). However, ALJ Gaughen's confidence in Dr. Oliver's testimony is misplaced for the reasons set forth above. Moreover, ALJ Gaughen's purported reliance on "the numerous stable findings by Dr. Mercer" is undermined by the January 2014 IVUS test results and subsequent bypass surgery. Additionally, ALJ Gaughen's assertion that Plaintiff experienced continued improvement with treatment in 2014 is inconsistent with Dr. Oliver's testimony indicating a cardiac stress test should be conducted to assess whether Plaintiff has experienced an improvement as a result of the bypass surgery.

3

Plaintiff has raised other reasons why ALJ Gaughen's residual functional capacity assessment is not supported by substantial evidence in the record and/or does not comport with applicable law (DN 14-1). The undersigned concludes it is not necessary to address those claims because there already exists a more than an adequate basis for reversing the final decision of the Commissioner.

<u>Sentence Four Remand</u>

"A district court's authority to remand a case ... is found in 42 U.S.C. § 405(g) ..." <u>Hollon ex rel. Hollon v. Comm'r of Soc. Sec.</u>, 447 F.3d 477, 482-83 (6th Cir. 2006). The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." <u>Faucher v. Sec'y of Health & Human Servs.</u>, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

Sentence four of 42 U.S.C. § 405(g) authorizes a post judgment remand. Under sentence four, the court makes a final judgment (e.g., affirming, reversing, or modifying the final

decision of the Commissioner) and remands the case to the Commissioner with instructions to consider additional evidence and/or conduct additional proceedings to remedy a defect in the original proceedings. Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 175 (6th Cir. 1994).

Here, the undersigned concludes the final decision of the Commissioner should be reversed and the case remanded to the Commissioner with instructions to consider an updated or new medical opinion that is based on the evidence submitted after Dr. Oliver testified. The updated or new medical opinion should be used to determine whether Plaintiff meets or medically equals a listing in Appendix 1 and to assess Plaintiff's residual functional capacity. Additionally, the Administrative Law Judge assigned the case should conduct a new administrative hearing and issue a new administrative decision based on the evidence in the record.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the Commissioner with instructions to obtain an updated or new medical opinion regarding Plaintiff's cardiovascular condition and conduct additional proceedings to remedy the defects in the original proceedings.

Copies:	Counsel